IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARLYN JAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Case No. CIV-19-140-JFH-KEW |
| ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Arlyn Jay (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1]   Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 41 years old at the time of the decision. He has a high school education. He worked in the past as a warehouse worker, black wall tire painter, and forklift driver. He alleges an inability to work beginning on December 15, 2015, due to depression, social disorder, anxiety, and lower back pain.

## Procedural History

On May 25, 2016, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. He also filed for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act on October 25, 2016. Claimant's applications were denied initially and upon

3

reconsideration. On June 4, 2018, ALJ James Linehan conducted an administrative hearing by video from Oklahoma City, Oklahoma. Claimant participated from Ardmore, Oklahoma. On August 16, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on March 7, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform medium work, with limitations.

### Errors Alleged for Review

Claimant asserts the ALJ's findings as to his mental limitations are not supported by substantial evidence. Specifically, he argues the ALJ failed to properly evaluate and weigh the opinion of consultative examiner, Dana D. Foley, Ph.D.

### Consideration of the Consultative Opinion Evidence

In his decision, the ALJ found Claimant suffered from severe impairments of depression and anxiety. (Tr. 16). He determined Claimant could perform work at the medium exertional level, with additional limitations. Specifically, Claimant was limited to work

at the SVP level of 2 or less as defined by the Dictionary of Occupational Titles ("DOT") with the ability to understand, remember, and carry out ordinary and/or routine written or oral instructions and tasks with the ability to interact occasionally with supervisors, co-workers, and the public. (Tr. 20).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform his past relevant work as a warehouse worker and a black wall tire painter. (Tr. 25). Alternatively, the ALJ determined Claimant could perform the representative jobs of machine cleaner, laundry laborer, and bagger, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 26-27). As a result, the ALJ concluded Claimant was not under a disability from December 15, 2015, his amended onset date, through the date of the decision. (Tr. 27).

Claimant contends the ALJ failed to properly evaluate opinions from consulting psychologist, Dr. Foley. He argues the ALJ failed to explain the weight afforded to Dr. Foley's opinions, and it is unclear from the decision how the ALJ treated certain of Dr. Foley's findings, including findings that Claimant suffered from "marked hygiene" and that with treatment and support he could return to work.

Claimant underwent a psychological examination with Dr. Foley on March 25, 2017. She observed Claimant to be dressed in unclean,

5

casual clothing and inadequately groomed, and it appeared he had not bathed or shaved for some time. Claimant had been homeless since his father died. His posture was tense, but his gait was normal. He had adequate energy and was cooperative, polite, and pleasant during the examination. Claimant reportedly suffered from depression and anxiety, which began in 2005 after his cousin committed suicide, but became worse after the death of his adoptive mother in 2014 and his adoptive father in 2015. He has negative thoughts affecting his self-worth, trouble sleeping, worries about his family and finances, no sex drive, and feels anxious around other people. He has thought about suicide. Claimant received treatment in the form of medication and therapy, and he felt the treatment was effective. He reported that the night before his examination, he "fell down somewhere on the streets and thinks he had a seizure and his belongings were taken." Claimant had not been drinking. He reportedly had suffered from seizures for about a year, but he was not medically diagnosed. Claimant had a history of substance abuse problems, but reportedly was participating in a recovery program at the time of the examination.

Dr. Foley also noted Claimant could manage his activities of daily living (e.g., toileting, bathing, grooming, and feeding himself), sometimes attended church, graduated from high school, and had past alcohol-related arrests, but he had never served time in prison. Upon examination, Claimant's appearance was appropriate

in dress, but not in grooming, and he had "oddities" in presentation consistent with anxiety. His attention was good, and speech was normal except for "a halting rhythm with apparent anxiety." Dr. Foley assessed his intelligence as below average, but Claimant showed adequate concentration and memory functioning. He presented with "down mood and depressed affect" and was near tears throughout the examination. Claimant's thought processes were clear, coherent, linear, and goal directed. His thought content was appropriate, and he had no history of delusions. His judgment appeared reason-based, logical, and practical, his insight was accurate, and he did not report issues with impulse control. Claimant did not believe he could manage his own finances.

Dr. Foley diagnosed Claimant with major depression (recurrent, moderate, with anxious distress), and homelessness. Claimant appeared to have some deficits and impairment in social functioning, and some impairment in his occupational functioning could be related to depression. She noted that "he states that he wants to work to get better so he can return to work, and with treatment and support this is likely." (Tr. 430-33).

The ALJ specifically discussed Dr. Foley's mental examination of Claimant in detail, referencing Dr. Foley's finding that Claimant exhibited poor hygiene at the time of the examination, but also that he was homeless at that time and confirmed to Dr. Foley that he could manage his activities of daily living,

7

including toileting, bathing, grooming, and feeding himself. (Tr. 21). When assessing the "paragraph B" criteria at step three, the ALJ determined Claimant suffered a moderate limitation for adapting or managing oneself, noting that on serial examinations, Claimant demonstrated "good hygiene and appropriate attire." (Tr. 19). In his discussion of the evidence, the ALJ noted three examinations and/or therapy sessions of Claimant, all subsequent to Dr. Foley's March 25, 2017 examination (ranging from August 3, 2017, through February 28, 2018), wherein Claimant was observed to be appropriately dressed with normal hygiene or as well-groomed. (Tr. 22).

The ALJ also referenced Dr. Foley's discussion of Claimant's treatment for his mental health issues of depression and anxiety with outpatient therapy and medication and that Claimant found the treatment effective. He mentioned that Claimant appeared with "down mood and depressed affect" upon examination by Dr. Foley. The ALJ further recited Dr. Foley's comments that Claimant "appeared" to have some deficits and impairment in his social and occupational functioning related to his depression, and he had expressed wanting to get better so he could return to work, and Dr. Foley had stated that with treatment and support, this was "likely." (Tr. 21).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal*

*v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c), 416.927(c). He must provide specific, legitimate reasons for rejecting any such opinions. The ALJ must consider several factors in weighing any medical opinions. *Id*. However, when an ALJ "d[oes] not reject the medical impairments found by [claimant's doctor] and there were no medical opinions regarding [claimant's] work-related functional limitations, there was no opinion on such matters by [claimant's doctor] for the ALJ to weigh." *Duncan v. Colvin*, 608 F. App'x 566, 574 (10th Cir. 2015); *see also Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) ("But Dr. Valette did not assign any functional limitations to Ms. Paulsen other than to mention that Ms. Paulsen 'probably had difficulty with concentration and remembering because of attention problems.' Accordingly, the ALJ was not required to consider Dr. Valette's opinion in formulating Ms. Paulsen's RFC.").

There is no error regarding the ALJ's consideration of Dr. Foley's consultative examination findings. Dr. Foley did not offer specific opinions regarding Claimant's functional limitations, but merely stated that Claimant appeared at the examination with poor hygiene and "down mood and depressed affect," and he "appeared" to have deficits and impairment in social functioning and "likely" impairment in occupational functioning. Based upon Claimant's statement that he wanted to get better so he could return to work, Dr. Foley commented that it was "likely" with treatment and

9

support. Considered within the context of her other findings, this Court agrees with the Commissioner that Dr. Foley's statement was not an opinion that Claimant was unable to work. The evidence in the record, including Dr. Foley's consultative examination, shows the ALJ included mental limitations in the RFC which accounted for deficits in social and occupational functioning.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 20th day of August, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE